PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  4:20CV2084 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| $774,830.00 IN U.S. CURRENCY, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ALEXANDRE P. HAUSSMANN, | ) | **ORDER** |
| | ) | [Resolving ECF Nos. 58, 60] |
| Claimant | ) | |
| | ) | |

## I.      Background

*A.  Pleadings*

Claimant Alexandre Haussmann was stopped for a traffic violation while driving a rental car on Interstate 80 in Northeast Ohio.  ECF No. 1 at PageID #: 3.  After searching the car, officers recovered $774,830.00 in U.S. currency.  ECF No. 1 at PageID #: 7.  U.S. Customs and Border Protection commenced an administrative proceeding against the defendant property, and Claimant subsequently submitted a sworn claim to the defendant property, commencing this civil forfeiture action.  ECF No. 1 at PageID #: 2.

Later, Claimant filed a Verified Claim for the defendant property, stating a claim of "ownership and possessory interest in, and right to exercise dominion and control over, all of Defendant property."  ECF No. 8 at PageID #: 32.  In his Answer (ECF No. 12), Claimant

(4:20-CV-2084)

provides very limited responses to the allegations within the Complaint.  Essentially, Claimant's

Answer does little more than provide a conclusory admission that Claimant possessed the

defendant currency before its seizure and asserts that Claimant had an innocent ownership

interest in the defendant property.  ECF No. 12 at ¶ 20; Fourth Affirmative Defense.

    B.  *Discovery*

During discovery Claimant repeatedly refused to provide substantive responses to the

Government's special interrogatories.[1]  Claimant failed to disclose how he came to possess the

currency and from whom he received the currency.  ECF No. 39 at PageID #: 246-248; ECF No.

45 at PageID #: 463.  He also failed to answer interrogatories regarding his relationship to the

currency and the identity of any other individual with a connection to the currency.  ECF No. 39

at PageID #: 246-248.  Claimant, instead, continuously objected to the interrogatories arguing

that they exceeded the scope of discovery or violated his Fourth Amendment rights.  ECF No. 39

at PageID #: 242-244, 246-248.  Similarly, Claimant demurred and declined to illuminate during

his deposition.

    C.  *Prior Motions and Appellate Review*

The Government filed a motion for summary judgment arguing that Claimant lacked

standing.  ECF No. 39 at PageID #: 253.  The Government also requested that the Court to strike

Claimant's Verified Claim and Answer.  ECF No. 39 at PageID #: 253.  In response, Claimant

invoked the Fourth Amendment, and contended that the Court must address his pending Motion

---

[1]  Claimant acknowledged, "[t]he government is exactly correct in its representation that Claimant
has consistently represented to the Government that, on advice of counsel, he has refused, and will
continue to refuse to answer any question posed by the Government regarding any evidence obtained
by the government following the alleged pretext stop and search of Claimant's vehicle and any fruits
of that illegal pretext stop of Claimant's vehicle."  ECF No. 45 at PageID #: 463.

(4:20-CV-2084)

to Suppress (ECF No. 25) before addressing the issue of standing. ECF No. 45 at PageID #: 467.

The Court granted Government's Motion for Summary Judgment, found Claimant lacked

standing, and denied the pending Motion to Suppress as moot.  ECF No. 49 at PageID #: 518.

>Claimant appealed the Court's decision.  The Sixth Circuit held:

>[b]ecause Haussmann asserted his **ownership interest** in his verified claim, answer and interrogatory responses, and because the government furnished evidence of Haussmann's control of the rental vehicle when the currency was seized from its trunk, he established constitutional standing at this stage of the litigation. Notably, the finding of Haussmann's standing at this stage of the litigation does "no more than give him the right to contest that his property rights in the cash are properly subject to forfeiture;" it is not a ruling on the merits of his claim over the currency **nor does it govern his standing at later stages of the litigation**. *See $148,840 in U.S. Currency, 521 F.3d at 1278.*

*United States v. $774,830.00 in U.S. Currency*, No. 22-3392, 2023 WL 1961225, at *5 (6th Cir.

Feb. 13, 2023) (emphasis added).  In addition, the majority opinion states:

>**This case may have had a different outcome had the district court exercised its discretion to strike Haussmann's ownership assertions due to his repeated refusals to pa rticipate in certain aspects of the discovery phase.** Although the government's motion for summary judgment also urged the court to strike Haussmann's verified claim, the district court did not address the government's motion to strike. (footnote omitted)

*Id.* (emphasis added).[2]

>Ultimately, the Sixth Circuit vacated the Court's Memorandum of Opinion and Order

(ECF No. 49) and Judgment Entry (ECF No. 50) and reversed the Court's grant of summary

judgment to the government.

---

[2] *Cf.* $774,830.00 in U.S. Currency, No. 22-3392, 2023 WL 1961225 at *8 (Clay, J., dissenting) (stating "[w]hile the district court did not explicitly state that it had struck the verified claim, *the district court did explicitly write* that it was granting the government's motion for summary judgment and to strike Haussmann's verified claim 'in its entirety.'") (emphasis added).

(4:20-CV-2084)

*4. Post-Remand Motions*

In accord with the Sixth Circuit's ruling, the Government has moved the Court to strike Claimant's Verified Claim and Answer.  ECF No. 58.  Claimant responded (ECF No. 59) and the Government replied (ECF No. 61).  Claimant has also moved for an evidentiary hearing (ECF No. 60) on his amended motion to suppress (ECF No. 25).

## II.    Standard of Review

*In rem* civil forfeiture actions are governed by the Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983.  Forfeiture proceedings also adhere to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").  18 U.S.C. § 983(a)(4)(A).  When property is subject to a forfeiture action *in rem*, a person claiming an interest in that property may contest the forfeiture.  Supplemental Rule G(5).  Contesting a forfeiture requires a person to file a claim that identifies the specific property claimed, identifies the claimant and states the claimant's interest in the property, is signed by the claimant under penalty of perjury, and is served on the government.  Supplemental Rule G(5)(a)(i)(A)-(D).

Supplemental Rule G(8)(c)(i) provides two avenues for the government to move to strike a claim or answer, any time before trial: (1) for failing to comply with Rule G(5) or (6); or (2) because the claimant lacks standing.  The Motion to Strike

> must be decided before any motion by the claimant to dismiss the action; and may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence.

Supp. R. (G)(8)(c)(ii).

Standing is a threshold issue in all federal cases, including civil forfeiture proceedings. *United States v. $64,800.00 U.S. Currency*, 21 F.App'x 439, 439-40 (6th Cir. 2001).  To contest a governmental forfeiture action, a claimant must have both statutory and Article III standing.

4

(4:20-CV-2084)

*U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 487 (6th Cir. 1998).  Article III's case-or-controversy requirement imposes three requirements to establish standing: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  The evidentiary requirements for standing change according to the stage of the litigation.  *Id.* at 561.  At the pleading stage, an assertion of ownership is sufficient to confer standing.  *$31,000.00 in U.S. Currency*, 872 F.3d at 353.  As litigation ensues, standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.

In civil forfeiture actions, courts have used the "'colorable interest' test, which requires a claimant to present 'some evidence of ownership' beyond the mere assertion of an ownership interest in the property."  *United States v. $99,500 in U.S. Currency*, 339 F. Supp. 3d 690, 696 (N.D. Ohio 2018), *aff'd sub nom. United States v. $99,500.00 U.S. Currency Seized on Mar. 20, 2016*, 795 F. App'x 332 (6th Cir. 2019).  Relying on the colorable interest test, "Article III's standing requirement is … satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in party by the return of the seized property."  *United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998).

Usually, a verified claim alleging ownership satisfies the requisite interest to challenge forfeiture.  *$31,000.00 in U.S. Currency*, 872 F.3d at 351.  A bare possessory interest in the property, however, requires additional "explanatory evidence."  *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273, 1275 (10th Cir. 2008); accord *$515,060.42*, 152 F.3d at 497-98.  "After all, if a person possessed property illegally, he would suffer no injury if the

5

(4:20-CV-2084)

government took that property; he had no legal interest in the property to begin with." *United States v. $31,000.00 in U.S. Currency*, 774 F. App'x 288, 291 (6th Cir. 2019).

### III.    Discussion

At the threshold, the Court addresses Claimant's objections to the Government's motion to strike made, pursuant to Supplemental Rule G(8)(c)(i)(B).  ECF No. 58.  Claimant urges that a "Rule G(8)(c) motion *must* be presented 'as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment…." ECF No. 59 at PageID #: 582 (emphasis added).  An accurate reading of the statute reveals that the motion *may* be presented as such.  Supplemental Rule G(8)(c)(ii)(B) (emphasis added).  Additionally, Claimant objects, claiming that, because the Government asks the Court to strike various pleadings and responses, the Government is seeking relief under Fed. R. Civ. P. 37(b).  ECF No. 59 at PageID #: 581.  As the Government clarifies in its response, its motion to strike is per Supplemental Rule G(8)(c)(i)(B), not Fed. R. Civ. P. 37(b).  ECF No. 61 at PageID #: 641-642.  Supplemental Rule G(8)(c)(i)(B) permits the Government's motion.  Neither of claimant's objections have merit.

The Court now turns to the issue of standing.  The Sixth Circuit ruled that Claimant's claim of ownership in his Verified Claim and his Answer combined with the Government's Complaint stating that the currency was found in Claimant's possession, establishes "constitutional standing at this stage." $774,830.00 in U.S. Currency, No. 22-3392, 2023 WL 1961225 at *5.  The Sixth Circuit went on to explain that while such a minimal showing establishes "a colorable interest in the seized property," that interest is not sufficient establish Claimant's ownership of the currency.  Without an ownership claim, a claimant cannot establish standing.  In *United States v. $39,000 in U.S. Currency*, the Sixth Circuit ruled that the claimant, "'bears the burden of demonstrating an interest in the seized [currency] sufficient to satisfy the

(4:20-CV-2084)

court of his standing as a claimant' and, *after discovery*, *'[m]ere physical possession of property does not suffice to show standing*." 951 F.3d 740, 742 (6th Cir. 2020) (emphasis added).

At this intersection, the Government urges the Court to strike Claimant's "Verified Claim and Answer due to Claimant's failure to provide evidence at any time, including during discovery, to support his ownership of the currency." ECF No. 58 at PageID #: 561. The Government relies on, as indicated above, Claimant's persistent refusals to respond to the Government's many inquiries by delivering only conclusory and non-illuminating responses to interrogatories and at his deposition. He continuously asserted constitutional privilege throughout the discovery process, and, despite given the opportunity to do so, failed to explain his relationship to the currency. ECF No. 58 at PageID #: 565-574. By withholding this information, Claimant has failed to establish that he owns the currency or otherwise has standing to challenge the lawfulness of the seizure. *$39,000 in U.S. Currency*, 951 F.3d at 742.

Claimant responds by arguing that he has standing at this stage of the litigation and insists that the Court must adjudicate his motion to suppress at this stage of the litigation. ECF No. 59 at PageID #: 584. He is incorrect. As the Sixth Circuit ruled, the colorable interest he established early on "does no more than give him the right to contest that his property rights in the cash are properly subject to forfeiture." $774,830.00 in U.S. Currency, No. 22-3392, 2023 WL 1961225 at *5. Unfortunately for Claimant, his silence has caused him to fail to mature that colorable interest into an ownership right.[3]

---

[3] "For claims of ownership, [a] verified claim must be supported by some evidence of *ownership*, not merely evidence of *possession* nor, []'some form of control' over the seized currency." $774,830.00 in U.S. Currency, No. 22-3392, 2023 WL 1961225 at *6 (Clay, J., dissenting) (citing *U.S. v. Phillips*, 883 F.3d 399, 403 (4th Cir. 2018)) (additional citations omitted) (emphasis original).

(4:20-CV-2084)

The Sixth Circuit's opinion in the instant case is instructive in resolving the Government's Motion to Strike (ECF No. 58).[4]  The Sixth Circuit explained the district court had "discretion to strike [Claimant]'s ownership assertions due to his repeated refusals to participate in certain aspects of the discovery phase."  *$774,830.00 in U.S. Currency*, No. 22-3392, 2023 WL 1961225, at * 4-5.  In similar cases, claimants often rely on Fifth Amendment privilege to avoid engaging in the discovery process.  The Sixth Circuit has repeatedly upheld district courts striking verified claims and other bald, conclusory assertions of ownership when claimants assert Fifth Amendment privilege.  *See, e.g. $99,500.00 U.S. Currency Seized on Mar. 20, 2016*, 795 F.App'x at 337; *$31,000.00 in U.S. Currency*, 774 F.App'x at 292; *$39,000.00 in U.S. Currency*, 951 F.3d at 742.  Additionally, the Sixth Circuit has affirmed a district court when the court struck conclusory assertions of ownership after making a finding that the claimants "abused the discovery process."  *$31,000.00 in U.S. Currency*, 774 F.App'x at 291.

The Court finds that Claimant has similarly abused the discovery process "due to his repeated refusals to participate in certain aspects of the discovery phase."  *$774,830.00 in U.S. Currency*, No. 22-3392, 2023 WL 1961225, at * 5.  While Claimant asserted a Fourth Amendment constitutional protection instead of a Fifth Amendment privilege ( ECF No. 59 at

---

[4] Claimant primarily relies on nonbinding case law that originates outside of the Sixth Circuit to support his position that the Court must adjudicate his motion to suppress before deciding Government's motion to strike.  *See, e.g.* ECF No. 59 at PageID #: 586, 589, 597.  Contrary to Claimant's position, a claimant must have standing for the Court to reach his Fourth Amendment challenge.  *See $39,000 in U.S. Currency*, 951 F.3d at 742 (holding "before determining whether the government lawfully seized the defendant property, [a claimant] must establish that he has standing to challenge the lawfulness of seizure"); *$31,000.00 in Currency*, 774 F.App'x at 293 n.1 (explaining because claimants lacked standing, the Court does "not consider their underlying claims about the propriety of the initial seizure").

(4:20-CV-2084)

PageID #: 586, 598),  the logic remains the same.  A blanket assertion of a constitutional

privilege is no defense in a forfeiture proceeding.  *$31,000.00 in U.S. Currency*, 774 F.App'x at

291-292 (quoting *United States v. Certain Real Prop. 556 Hendrickson Blvd., Clawson, Oakland*

*Cnty., Mich.,* 986 F.2d 990, 996 (6th Cir. 1993)).  The Sixth Circuit has held that relying on Fifth

Amendment privilege could allow a claimant to proceed with what may be false evidence while

the government is deprived of any means of detecting the falsity.  *$39,000.00 in U.S. Currency,*

951 F.3d at 742 (finding "[a] 'universal invocation of the Fifth Amendment during discovery

foreclose[s] any way for [a claimant] to sustain [his] burden'").  By invoking the Fourth

Amendment as a shield, Claimant has left the Court with no plausible evidence of ownership.[5]

At base, the Fifth Amendment exists as a shield against compulsory self-incrimination,

not as a sword used to ensure assertions of ownership cannot be questioned.  *$31,000 in U.S.*

*Currency*, 774 F.App'x at 292.  The same reasoning extends to the Fourth Amendment.  The

Fourth Amendment protects individuals from government violations of legitimate expectations

of privacy, and those with standing can challenge Fourth Amendment violations.  *See Katz v.*

*U.S.*, 389 U.S. 347 (1967); *U.S. v. Salvucci*, 448 U.S. 83 (1980) (holding there is "no automatic"

standing to object to a search).  The Fourth Amendment cannot, however, be employed as a

maneuver to avoid answering questions regarding ownership.  Furthermore, Claimant's Fourth

Amendment challenges are premature.  Standing must be established before a Fourth

---

[5] Equally problematic to Claimant's "non-answers" (described above) are his contradictory answers.  He claimed no knowledge of whom owned the currency when stopped by law enforcement officers, but later changed his tune by claiming ownership of the currency in his verified claim of ownership, depriving the Court of the ability to make any credibility determinations in his favor.

9

(4:20-CV-2084)

Amendment challenge becomes ripe. *See $39,000.00 in U.S. Currency*, 951 F.3d at 742;
*$31,000.00 in Currency*, 774 F.App'x at 293 n.1.

"When a person challenges a forfeiture and invokes the Fifth Amendment during
discovery, he must bear the consequences of his silence." *$31,000.00 in U.S. Currency*, 774
F.App'x at 292. The same holds true under the Fourth Amendment. Claimant must bear the
consequences of his silence and the consequences of him abusing the discovery process. "The
Sixth Circuit specifically noted that the government has at its disposal special interrogatories that
are for the very purpose of discovering the veracity of a claim of ownership." *United States v.
$31,000 in U.S. Currency*, No. 1:16 CV 1581, 2018 WL 2336814, at *6 (N.D. Ohio May 23,
2018), *aff'd sub nom. United States v. $31,000.00 in U.S. Currency*, 774 F. App'x 288 (6th Cir.
2019). The special interrogatories will "either confirm a claimant's interest in the *res* or expose
the futility of the claim of ownership." *$31,000 in U.S. Currency*, 872 F.3d at 354. By
repeatedly invoking the Fourth Amendment *and* refusing to answer the special interrogatories,
Claimant left the government unable to test his bare ownership assertions. The Court is asked to
accept Claimant's ownership claims without him ever disclosing any information regarding his
relationship to the defendant currency.

Against this background, the Court grants the Government's motion and strikes
Claimant's Verified Claim and Answer. This leaves the record devoid of any plausible claim of
ownership. Without a verified claim or any other plausible evidence of ownership, Claimant is
left with an unsupported claim, insufficient to establish standing.

10

(4:20-CV-2084)

### IV.    Conclusion

For the reasons set forth above, the Court grants Government's Motion to Strike (ECF No. 58).  The Court denies Claimant's Motion to Suppress (ECF No. 25) and Post Remand Motion for Evidentiary Hearing on the Motion to Suppress (ECF No. 60) as moot.


IT IS SO ORDERED.


| March 25, 2024 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

11